CHAPMAN LAW GROUP
Summer McKeivier SBN 230605
1441 Long Lake Rd., Ste. 310
Troy, MI 48098
Telephone (248) 644-6326
Fax (248) 644-6324
smckeivier@chapmanlawgroup.com

Attorneys for Plaintiff
Dr. David Bockoff

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| David Bockoff, MD,<br><br>　　　　Plaintiff,<br>vs.<br><br>**MERRICK GARLAND**, Attorney General of the United States, United States Department of Justice; **ANNE MILGRAM**, Administrator Drug Enforcement Administration, United States Department of Justice: **UNITED STATES DEPARTMENT OF JUSTICE**; and **DRUG ENFORCEMENT ADMINISTRATION**, United States Department of Justice,<br><br>　　　　Defendants. | Case No.: 2:22-cv-9046<br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST THE DRUG ENFORCEMENT ADMINISTRATION'S IMMEDIATE SUSPENSION ORDER** |

**PLEASE TAKE NOTICE** that Plaintiff, David Bockoff, M.D. ("Dr. Bockoff"), respectfully applies to this Court for a Temporary Restraining Order enjoining Defendants Merrick Garland, Anne Milgram, the United States Department of Justice, the Drug Enforcement Administration, and their officers, agents, servants, employees, attorneys, successors, representatives, or anyone acting on their behalf (collectively "Defendants") from

enforcing the Drug Enforcement Administration's ("DEA") Immediate Suspension Order ("ISO"), suspending Dr. Bockoff's DEA registration and thus his ability to prescribe controlled substances. (**Ex. A, Order to Show Cause and Immediate Suspension of Registration**)

As certified in the Affidavit of David Bockoff, M.D., (**Ex. B, Affidavit of David Bockoff**) submitted in support of this application, Dr. Bockoff has satisfied the Federal Rule of Civil Procedure 65 requirement as to providing the factual basis for why the requisite Notice time requirements would continue to cause immediate and irreparable harm to Dr. Bockoff, his medical practice, its employees, and patients if Defendants were allowed the full time provided under the local rules to submit a responsive memorandum before the Court considers this application.  Dr. Bockoff's counsel, Summer McKeivier, has nonetheless communicated with the DEA, as a courtesy to advise that this application would be submitted to the Court for consideration.  Specifically, as indicated in her declaration, on December 14, 2022, Ms. McKeivier called DEA counsel Vanea Morrell and offered the DEA an opportunity to rescind the ISO of Dr. Bockoff's registration. After DEA counsel declined to do so, Ms. McKeivier informed her that she would be filing this Application for a Temporary Restraining Order ("TRO") and followed up the call with an email stating the same. (**Ex. C, Declaration of Summer McKeivier**)

This Application is based upon the complaint, accompanying memorandum, the referenced exhibits, the declaration of Dr. Bockoff, as well as any evidence and oral argument that may be presented at the hearing thereon. Dr. Bockoff respectfully requests this Court immediately issue the requested TRO because continued enforcement of the DEA's ISO continues to cause significant, irreparable harm to him, his medical practice and his patients.

# TABLE OF CONTENTS

**Table of Authorities** .................................................................................................... ii

**Memorandum of Points and Authorities** ..................................................................... 1

**I.   Background** ............................................................................................................ 1

**II.  Legal Standard** ...................................................................................................... 2

**III. Argument** ............................................................................................................... 2

   1. *Dr. Bockoff is Likely to Succeed on the Merits*……………………………………3

   2. *Dr. Bockoff Will Suffer Irreparable Harm in the Absence of Preliminary Relief*……6

   3. *The Balance of Equities Tips Sharply in Dr. Bockoff's Favor*………………………7

   4. *The Public Interest Weighs in Dr. Bockoff's Favor*…………………………………9

**IV. Conclusion** ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases** Page

*Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127(9th Cir. 2011) ..................................... 2

*Bates Drug Stores, Inc. v. Bates,* 2011 U.S. Dist. LEXIS 52404, at *6 (E.D. Wash. May 6, 2011)................................................................................................................................ passim

*Beno v. Shalala,* 30 F.3d 1057(9th Cir. 1994) ............................................................................ 3,5

*Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156 (1962) ............................................ 3

*Oak Hill Hometown Pharm. v. Dhillon,* 418 F. Supp. 3d 124(S. D. W. Va. 2019)........................ 9

*Swan View Coalition, Inc. v. Barbouletos,* 307 Fed. Appx. 49 (9th Cir. 2009) ............................ 3

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ............................................................... 2

**Statutes**

5 U.S.C. § 706(2)(A) ..................................................................................................................... 3

21 U.S. Code § 824(d) ................................................................................................................... 3

Ca. Health and Safety Code § 124961 .......................................................................................... 8

Ca. Intractable Pain Treatment Act § 2241.5................................................................................. 8

# MEMORANDUM OF POINTS & AUTHORITIES

## I.     Background

Dr. Bockoff, a doctor of internal medicine, owns and operates his clinic, with a primary focus on pain management, in the West Hollywood/Beverly Hills area of Los Angeles. He earned his Doctor of Medicine from Wayne State University School of Medicine in 1968 and completed his residency at St. Mary Medical Center in Long Beach, California through the University of California, Los Angeles. Prior to opening his current practice in 2003, he worked at numerous hospitals and clinics around Southern California in a variety of medical specialties. For the last 20 years, Dr. Bockoff's practice has focused on offering pharmacological pain management to patients suffering from intractable pain.

Dr. Bockoff has held a valid DEA registration to prescribe controlled substances, a vital part of the pharmacological pain management treatment for his patients, for over fifty (50) years. However, on November 1, 2022[1], the DEA issued an Order to Show Cause ("OSC") and Immediate Suspension Order ("ISO") of his registration. (**Ex. A**) In doing so, the DEA claims that Dr. Bockoff's DEA registration must be suspended immediately, pending the formal OSC hearing, because his continued prescribing constitutes "an imminent danger to the public health or safety." Specifically, the DEA alleges that between January 2020, through June 2022[2], Dr. Bockoff unlawfully issued controlled substances to five (5) patients. *Id*.

This application for a Temporary Restraining Order ("TRO") challenges the DEA's immediate suspension of his registration to prescribe controlled substances. The Court should grant the

---

[1] The ISO was stamped on October 25, 2022 but was not delivered to Dr. Bockoff in-person at his office until November 1, 2022.

[2] The ISO allegations of prescriptions issued between January 2020 and June 2022. Plaintiff believes this to be an error as no patient records were seized or provided between the September 2021 search warrant and service of the suspension on November 1, 2022.

emergency relief sought for the reasons stated below.

## II.     Legal Standard

A TRO is an important remedy sought by a party who wishes to either compel or prevent an action that is adversely affecting them, their business, and oftentimes, negatively impacting the public in general.  It may be issued to maintain the status quo should the plaintiff satisfy the following four criteria, which include: (1) his likely success on the merits, (2) whether he is likely to suffer irreparable harm in the absence of such preliminary relief, (3) whether the balance of equities tips in his favor, and (4) whether an injunction is in the public interest, often referred to as the *Winter* factors.  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Ninth Circuit employs a "sliding scale" is when analyzing factors one (1) and three (3), requiring the moving party to demonstrate there are *serious* questions as to the merits and that the balance of hardships tips *sharply* in the plaintiff's favor.  *Id.* (adding the use of this sliding scale has often been referred to as the "serious questions" test); *see also Winter,* 555 U.S. at 51 (Ginsburg, J., dissenting) (holding the "Court has never rejected [the sliding scale] formulation, and I do not believe it does so today.")

## III.    Argument

For almost fifty (50) years, Dr. Bockoff has held a valid DEA registration permitting him to prescribe controlled substances, a foundational part of his pain management practice.  The status quo therefore is his continued authority to prescribe controlled substances.  Accordingly, this Court may grant the requested TRO to maintain such status quo upon his demonstration that the *Winter* factors weigh in his favor.

The *Winter* factors weigh in Dr. Bockoff's favor, and this Court should grant his TRO thereby allowing him to continue prescribing controlled substances to his patients for the following reasons.

### 1. *Dr. Bockoff is Likely to Succeed on the Merits*

Under the Administrative Procedure Act (APA), this Court may set aside an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with 5 U.S.C. § 706(2)(A). *Swan View Coalition, Inc. v. Barbouletos*, 307 Fed. Appx. 49, 50 (9th Cir. 2009); *Bates Drug Stores, Inc. v. Bates,* 2011 U.S. Dist. LEXIS 52404, at *6 (E.D. Wash. May 6, 2011); *see also Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962) (holding a "[c]ourt must determine whether there is a rational connection between the underlying facts and the agency's decision."). A court's review of an agency's action is limited to the record before it at the time of the agency's decision. *Beno v. Shalala*, 30 F.3d 1057, 1074 (9th Cir. 1994).

Though the DEA claims Dr. Bockoff's continued prescribing of controlled substances is "an imminent danger to the public health or safety," in violation of 21 U.S. Code § 824(d), an honest review of his practice reveals he responsibly prescribes controlled substances to address the legitimate medical needs of his patients making a genuine effort to appropriately document their medical conditions and the necessity of prescribing the same. (**Ex. A**) Indeed, Dr. Bockoff ensures to maintain patient files that document the controlled substances prescribed, and further, timely and continuously updates these patients' medical files to accurately reflect his medical decision making.

Admitting that improvements can always be made to better effectuate and describe the treatment, progress, and efficacy of the controlled substances on his patients' medical conditions, these are largely aspirational in nature. Dr. Bockoff's current medical records go well beyond the requirements for prescribing controlled substances. Nonetheless, Dr. Bockoff is committed to implementing these aspirational improvements, which include:

- Where similarities are present across patients, Dr. Bockoff too heavily relies on using templated language, a standard function of electronic medical record ("EMR")

    programs to summarize patients' symptoms and responses to pain medications. More individualized patient notes are therefore advisable.

      ▪ For instance, there are times when Dr. Bockoff will overly rely on using the phrase "meds are working" and "pain scale remains pretty consistent".

- Generally, Dr. Bockoff should also aspire to make his patient notes more detailed and specific to better document changes in his patients' lives, whether that be medically, socially, or otherwise and the impact his prescriptions have on those changes.

  These record-keeping deficiencies, however, are not a sufficient basis for the DEA to immediately suspend or revoke Dr. Bockoff's registration prior to due process afforded at an Order to Show Cause Hearing. *See Bates,* at \*7-10 (E.D. Wash. May 6, 2011) (rejecting the DEA's argument that a suspension order of pharmacy's registration was justified where there were several record-keeping and prescription irregularities discovered during the DEA's investigation). In *Bates*, the Court observed that while "[record-keeping and prescribing irregularities] [] can result in the illegal diversion, theft, tampering with, or unintended dispensing of dangerous and addictive controlled substances to the general public for improper use[,] [n]othing in the record demonstrates that any of those dangerous consequences occurred." *Id.* (adding "the Court has serious doubts that the alleged violations, which [the Pharmacy] has been diligently working to correct, pose an imminent danger to public health and safety.").

  Here, like the Pharmacy in *Bates,* nothing in the record evidences that any knowledge of diversion or other harmful consequences resulted from controlled substance prescriptions issued by Dr. Bockoff. In fact, as discussed in greater detail below, evidence suggests that significant and lethal consequences have followed his inability to prescribe due to the DEA's immediate suspension at issue

here.³

Indeed, while the ISO suggests the DEA's subject matter expert found that Dr. Bockoff prescribed excessive doses of opioids in dangerous combinations without an appropriate medical examination, while failing to adequately monitor and discuss with the patient the risks associated with use of the same, the DEA nor its expert can point to any actual harm suffered by patients of Dr. Bockoff resulting from those prescriptions. Therefore, as in *Bates*, there is simply no sufficient basis, on the record before this Court, to immediately suspend Dr. Bockoff's registration to prescribe controlled substances without the guarantee of due process afforded to similarly situated providers. *See e.g., Bates,* LEXIS 52404, at *10-11 (recognizing that a court's review of the facts is limited to the record before it at the time of the DEA's decision to issue its suspension); *see also Beno,* 30 F.3d at 1074 (confirming review is limited to the record before the court at the time of an agency action).

The DEA therefore fails to substantiate that Dr. Bockoff's prescribing, or continued prescribing, of controlled substances poses "an imminent danger to the public health or safety." Instead, its immediate emergency suspension of his registration is arbitrary and capricious. *See Bates,* LEXIS 52404, at *9 (finding "[o]n this record, the Court finds that serious questions exist as to whether the Suspension Order supports a finding that [] [the Pharmacy's] practices posed an imminent danger to the public health and safety. Accordingly, the [] [Pharmacy] ha[s] demonstrated a likelihood of success on the merits.").

Dr. Bockoff is likely to succeed on the merits as no evidence exists in the record before the Court to support the contention that his continued prescribing poses "an imminent danger to the public health or safety" thereby compelling this Court to grant the TRO against the DEA's Immediate Suspension Order. Such order will effectively reinstate Dr. Bockoff's registration to prescribe

---

³ (*See* Josh Marcus, *Couple dies by suicide after DEA shuts down office of their chronic pain doctor in fentanyl panic,* Independent (Dec. 1, 2022), https://www.independent.co.uk/news/world/americas/dea-fentanyl-opioid-crisis-suicide-b2236501.html).

controlled substances so that he may resume appropriately treating his pain patients.

  *2. Dr. Bockoff Will Suffer Irreparable Harm in the Absence of Preliminary Relief*

As is the case with all chronic pain treating physicians, Dr. Bockoff's clinic, and thereby his income, are contingent on his ability to prescribe controlled substances to address his patients' legitimate medical needs.  Though the Government prefers shinning a spotlight on harmful consequences associated with the use of opioids, it is equally important to take stock of the therapeutic benefits acknowledged that this class of medication provides.  Ironically, what makes opioids potentially dangerous is exactly what makes them effective: their potency.

Patients with chronic and refractory pain, which comprise the majority of Dr. Bockoff's patient population, require opioid medications to treat their severe and intractable pain.  Without the ability to prescribe opioids, he cannot effectively treat the painful and debilitating symptoms of his patients, forcing them to seek treatment elsewhere and his practice to close indefinitely.  In fact, since the immediate suspension, Dr. Bockoff has kept his office open, at his own expense, to help his patients find, and provide medical records to, providers who are willing and can treat them with the necessary controlled substance prescriptions.

Again, in *Bates,* as is the case here, the Court held that the pharmacy's "very existence" was threatened by the DEA's suspension of its registration.  LEXIS 52404, at *5-6.  That is, the Court found that the pharmacy's revenue dropped twenty percent (20%) in the first twenty (20) days following the DEA's suspension order and further observed its contract with a third-party billing provider had been terminated due to the DEA's suspension of its registration.  *Id.*  The "very existence" of Dr. Bockoff's pain management practice is also threatened by the DEA's immediate suspension preventing him from prescribing the controlled substance medications needed to treat his patients' chronic pain. **(Ex. B)**

Accordingly, Dr. Bockoff will suffer irreparable harm if this Court denies his application for a

TRO enjoining the enforcement of the ISO. The emergency relief sought will allow him to continue issuing prescriptions for controlled substances pending the outcome of the OSC proceedings where Dr. Bockoff will be afforded the opportunity to defend his medical decisions.

### 3. *The Balance of Equities Tips Sharply in Dr. Bockoff's Favor*

A significant shortage of providers already exists across the United States.[4] This shortage is further exacerbated by providers that are generally hesitant to prescribe opioids based on the DEA's rash actions of immediate suspension and attempts to completely revoke their registrations. As acknowledged in *Bates,* "[t]he public has an interest in the DEA's continued diligent regulation of controlled substances, particularly those narcotics with street value." LEXIS 52404, at *9-10. Nonetheless, as it further concluded, "the [DEA] Suspension Order [in this case] was not issued in the abstract: it impacts the lives of countless human beings. [] [The Pharmacy's] interest in providing continued care to its customers in need of medicine, employment to its employees, and support to patients in long-term care and assisted-living facilities tips the balance of equities in [] [the Pharmacy's] favor." *Id.* The *Bates* Court thus found that the balance of equities tipped *sharply* in the Pharmacy's favor and granted its motion for a TRO. *Id.*

Similarly, the DEA's suspension of Dr. Bockoff's registration is not in the abstract. It has, and continues to, adversely affect Dr. Bockoff, his clinic and its employees and his patients. The suspension's adverse consequences are profoundly illustrated by the suicide of two (2) of those patients who claimed Dr. Bockoff's inability to prescribe the medications relied upon to function and enjoy life was too much after suffering for years unable to find a physician willing to treat them.[5]

Of course, when patients take their own lives, or suffer painful and life-threatening withdrawal

---

[4] See Andis Robeznieks, *Doctor shortages are here – and they'll get worse if we don't act fast,* American Medical Association (Apr. 13, 2022), https://www.ama-assn.org/practice-management/sustainability/doctor-shortages-are-here-and-they-ll-get-worse-if-we-don-t-act.

[5] The patient's previous doctor in Georgia had similar action taken by DEA requiring them to find a physician located as far as California.

symptoms, this undoubtedly also harms their family, friends, and other loved ones. In fact, many of Dr. Bockoff's patients have written letters expressing the significant harm and adverse effects they are experiencing because of his inability to prescribe controlled substances.

A common thread across all these letters is that Dr. Bockoff provided these patients excellent medical care while responsibly monitoring their opioid prescriptions. (**Ex. D; Ex. E; Ex. F; Ex. G, Patients' Letters**) Patient D.L.'s letter painfully details the crushing effects of abruptly cutting patients' opioid prescriptions without even a grace period and its failure to achieve the DEA's goal of decreased opioid dependence and addiction. (**Ex. D, D.L. Letter**) Correctly asserting that the Pain Patient's Bill of Rights, Ca. Health and Safety Code § 124961, and the California Intractable Pain Treatment Act § 2241.5 protects patients' rights to be treated with opioids where such doses constitute effective and legitimate medical treatment. In fact, D.L. further details the grave misconceptions surrounding opioids pointing out that even the CDC has revisited its earlier guidelines for them. *Id*. (stating "the CDC has confirmed that their 90 MME 'suggestion' (NOT Law), was NEVER intended for chronic pain patients and only did harm.")[6]

As additional evidence of Dr. Bockoff's necessary and responsible controlled substance prescribing, a letter authored by E.C., another patient, confirms he was effectively treating severe and chronic pancreatic pain while lowering the dosage of opioids prescribed to her. (**Ex. E, E.C. Letter**) (E.C. informs that she now takes sixty percent (60%) less opioids than previously taken a few years ago). Yet beyond simply prescribing opioids, her letter confirms that Dr. Bockoff in fact helped counsel her on how to manage her chronic pain while effectively managing her opioid medications. *Id*. E.C. further describes how the only way she has been able to effectively manage her pain is through the controlled substance prescriptions issued by Dr. Bockoff and explains that without them

---

[6] Deborah Dowell, et al., *CDC Clinical Practice Guideline for Prescribing Opioids for Pain – United States, 2022,* Centers for Disease Control and Prevention (Nov. 4, 2022), https://www.cdc.gov/mmwr/volumes/71/rr/rr7103a1.html

she is unable to function in her role as an attorney. *Id.*

In light of the significant and adverse consequences Dr. Bockoff's patients are suffering, and unless, or until, the DEA can point to specific harm suffered by patients from his controlled substance prescribing, the balance of equities must *sharply* tilt in his favor, as in *Bates. Id.: see also Oak Hill Hometown Pharm. v. Dhillon,* 418 F. Supp. 3d 124, 133 (S.D.W. Va. 2019) (dissolving DEA's immediate suspension order and holding the "imminent danger to public health and safety" that will result if a provider's registration to prescribe controlled substances is suspended must also be assessed).[7]

Accordingly, this Court should therefore grant TRO and prevent the DEA from suspending his registration to prescribe controlled substances.

### 4. The Public Interest Weighs in Dr. Bockoff's Favor

Lastly, but perhaps, most importantly, the public interest weighs in favor of Dr. Bockoff's continued authority to prescribe controlled substances.  As mentioned above, two (2) patients have already taken their lives in the little over a month since the ISO citing the doctor's registration suspension as the primary reason for such drastic action.[8]

The impact on the public is also demonstrated by Dr. Bockoff's patients' letters, detailing the suffering caused by their trusted physician's inability to prescribe the medications required to alleviate their immense pain. As patient D.L.'s makes clear, the abrupt prohibition of Dr. Bockoff to treat his patients with the recognized and necessary controlled substance prescriptions not only leaves their debilitating pain unmanaged, but also exposes his patients to imminent and deadly risk as they have grown increasingly dependent on their medications. (**Ex. D**) It is important to note, that dependence is

---

[7] *See also Dhillon,* 418 F. Supp. 3d at 133 (recognizing the importance of providers for those prescribed opioids who frequently face a significant amount of stigma and suspicion, leading the Court to conclude "[w]e should be skeptical of allowing such suspicions to erect barriers to legal treatment.").

[8] *Id.* at Josh Marcus, *Couple dies by suicide after DEA shuts down office of their chronic pain doctor in fentanyl panic,* Independent (Dec. 1, 2022),

not always a negative attribute. Much like a diabetic is dependent on insulin, taking away the controlled substances allowed only by prescription from a DEA registered physician, the removal of such can be life threatening.

In her letter, patient M.C., details the need for her opioid medications to treat her chronic pain, while explaining how Dr. Bockoff diligently monitors her compliance with the same. (**Ex. F**, **M.C. Letter**) (explaining that at her visits with Dr. Bockoff performs urinalysis drug screening, takes her blood pressure, has her stand, and examines her back and legs, requests CT's, x-ray, or other imaging orders, and always enquires about how she is doing with her medication and physical therapy). As patient E.C. also explains the counseling provided by Dr. Bockoff helped her understand her pain management prescription opioid treatment for her chronic pancreatic pain. (**Ex. E**.) In fact, as previously mentioned, she includes how he helped taper her dosage so that she was able to manage her chronic pain with roughly sixty percent (60%) less opioids than she previously required a few years ago.[9] *Id.*

Aside from Dr. Bockoff's existing patients, this Court should also consider the many prospective patients that will suffer as he must turn them away and deny them treatment with controlled substances, likely the last medical option to treat their chronic pain. Though, as the Court acknowledged in *Bates,* alleged deficiencies, in theory, could potentially lead to the harm of patients, however, the DEA has failed to provide any instances of actual harm resulting from Dr. Bockoff's prescribing. *See Bates,* LEXIS 52404, at *10 Also, just as in *Bates,* Dr. Bockoff has and can continue to take steps to improve the DEA's alleged deficiencies in his medical record keeping by including greater detail in documenting and monitoring his patients' improvements, reactions or comments regarding their controlled substance treatments. *Id.* (recognizing the public interest tilted in

---

[9] These referenced patients are not simply drug-seeking individuals, but rather, are productive members of society. Indeed, three of the five are licensed, practicing attorneys. Therefore, their accounts should be granted weight and not simply dismissed as biased narratives to feed an opioid addiction or dependence issue.

pharmacy's favor where alleged serious violations were nevertheless correctable and have not harmed any patients or members of the public).

Additionally, there is a well-established administrative process already in place, short of the extreme measure taken here, to ensure that a physician not continue to prescribe controlled substances should an actual imminent threat to the public health, safety, and welfare be determined. The process allows state actors to seek a pre-hearing deprivation of a provider's prescription writing authority via medical licensing protections. However, the State of California has not sought such extreme administrative action against Dr. Bockoff, thereby, determining no evidence that he is a threat to the public health, safety, and welfare, exists.

The interests of the public clearly weigh in favor of Dr. Bockoff's continued ability to prescribe controlled substances to treat his patients. This Court should therefore grant his application for a temporary restraining order preventing the DEA from suspending his registration to prescribe controlled substances resulting in his ability to continue to address the medical needs of his patients.

//
//
//
//
//
//
//
//
//
//
//

**IV.**

## V. Conclusion

For the foregoing reasons, this Court should grant Dr. Bockoff's Application and issue a TRO preventing the DEA from suspending his controlled substance registration.

DATED this 15th day of December 2022.

                                              CHAPMAN LAW GROUP

By:    /s/ Summer McKeivier
        Summer McKeivier, CA #230605
        CHAPMAN LAW GROUP
        1441 West Long Lake Blvd., Ste. 310
        Troy, MI 48098
        Telephone: (248) 644-6326
        Fax: (248) 644-6324
        smckeivier@chapmanlawgroup.com

        Attorneys for Plaintiff
        David Bockoff, M.D.