UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BOCKOFF,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MERRICK GARLAND et al.,<br><br>　　　　Defendants. | Case No. 2:22-cv-09046-SB-KS<br><br>ORDER DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 16] |

　　　　On November 1, 2022, Plaintiff David Bockoff received an order to show cause and immediate suspension order (ISO) that suspended his registration to distribute controlled substances based on the U.S. Drug Enforcement Agency (DEA)'s investigation into his medical practice. The ISO claims that between January 2020 and June 2022, Plaintiff improperly prescribed high dosages of opioids and other controlled substances to five of his patients without, among other things, conducting appropriate medical evaluations and establishing medical necessity, and that his continued registration was an "imminent danger" to the public. Plaintiff filed this complaint for declaratory and injunctive relief from the ISO on December 15, along with an application for a temporary restraining order (TRO) to prevent Defendants—the Attorney General, Administrator of the DEA, U.S. Department of Justice (DOJ), and DEA—from enforcing the ISO against him. The Court heard from the parties at a hearing on January 3, 2023, and DENIES Plaintiff's application for a TRO.

I.

　　　　Plaintiff is a doctor of internal medicine who operates a clinic, primarily focused on pain management, in Los Angeles. Dkt. No. 2 (Compl.) ¶ 1. The Attorney General is required to register qualified applicants to prescribe controlled substances unless he determines that such registration is "inconsistent with the

1

public interest." 21 U.S.C. § 823. Plaintiff has been registered with the DEA and permitted to prescribe controlled substances for over 50 years. Compl. ¶ 1.

In September 2021, pursuant to a search warrant, the DEA collected records from Plaintiff about his patients and practice. Id. ¶ 3. According to the ISO, the DEA's investigation—which included an expert review of the medical records seized—demonstrated that Plaintiff had issued prescriptions to five of his patients "outside the usual course of professional practice and not for a legitimate medical purpose" in violation of state and federal laws. Compl. Ex. A at 3–4. The ISO alleges that Plaintiff prescribed high dosages of controlled substances to patients B.B., E.C., P.J., F.L., and A.W. without appropriate safeguards, including without proper medical evaluation, medical justification, medical records, and ongoing monitoring. Id. at 4–8. The controlled substances included fentanyl, oxycodone, and other opioids that are commonly abused. Id. at 4. Plaintiff's medical records, which were spread across various locations, were found to be blank or incomplete and often illegible. Id. at 8.

Based on these findings, the DEA temporarily revoked Plaintiff's registration pending a hearing on ultimate revocation pursuant to 21 U.S.C. § 824(d), which vests the Attorney General with discretion to "suspend any registration simultaneously with the institution of proceedings under this section, in cases where he finds that there is an imminent danger to the public health or safety." Under § 824(d), "the phrase 'imminent danger to the public health or safety' means that, due to the failure of the registrant to maintain effective controls against diversion or otherwise comply with the obligations of a registrant . . . , there is a substantial likelihood of an immediate threat that death, serious bodily harm, or abuse of a controlled substance will occur in the absence of an immediate suspension of the registration." 21 U.S.C. § 824(d)(2). The ISO outlines the administrative process for contesting the suspension and revocation. After receiving the ISO in November, Plaintiff requested a hearing by an Administrative Law Judge that is scheduled to take place over nine days, beginning January 19, 2023 and continuing into February (ALJ Hearing).

II.

TROs are analyzed in substantially the same way as preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4)

an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, a preliminary injunction is warranted where there are "serious questions going to the merits" and a "hardship balance that tips sharply toward the plaintiff"—provided the other two elements of the *Winter* test are also met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). When the government is a party, the last two of the four factors—the balance of the equities and the public interest—merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The first factor, likelihood of success on the merits, is "the most important *Winter* factor." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 756 (9th Cir. 2017) ("[I]f a movant fails to meet this threshold inquiry, the court need not consider the other factors."). In reviewing the DEA's decision to suspend a registration to prescribe controlled substances based on a determination of an immediate danger to the public, courts evaluate whether the decision was "arbitrary and capricious." *See Evergreen Pharmacy, Inc. v. Garland*, No. 22-03912, 2022 WL 3294842, at *5 (N.D. Ill. Aug. 11, 2022). A decision is arbitrary and capricious if the agency relied on factors Congress did not intend it to consider, failed to take account a significant issue, or offered an implausible explanation or one contrary to the evidence. *Defs. of Wildlife v. Zinke*, 856 F.3d 1248, 1257 (9th Cir. 2017). "[T]he relevant inquiry is whether [the plaintiff's] infractions demonstrate a pattern and practice of conduct which the DEA could reasonably conclude was inconsistent with public health and safety[;] if so[,] then the ISO is not arbitrary and capricious." *Evergreen Pharmacy, Inc.*, 2022 WL 3294842, at *8. The arbitrary and capricious standard is "highly deferential." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). A court's review of an agency action is confined to the record available to the agency at the time of its decision. *Beno v. Shalala*, 30 F.3d 1057, 1074 (9th Cir. 1994).

Plaintiff concedes that there were issues with his recordkeeping but argues that he did in fact conduct appropriate medical evaluation, testing, and monitoring to justify the high dosages of controlled substances that he prescribed to the five patients at issue in the ISO. Dkt. No. 16 (TRO) at 3–5. He asserts that despite these recordkeeping issues, the DEA could not "point to any actual harm suffered by patients" and therefore had no basis to suspend his registration. *Id.* at 5. But, based on the evidence available to the DEA at the time it issued the ISO, it could have rationally concluded that Plaintiff's practices constituted an imminent danger to public health or safety in violation of 21 U.S.C. § 824(d). The DEA's independent expert found that Plaintiff prescribed controlled substances in high

3

dosages—14 to 26 times the risk of overdose level according to the CDC—to at least five of his patients without taking an appropriate medical history, completing an appropriate medical examination, establishing medical necessity, obtaining informed consent, mitigating the risks of addiction and diversion, monitoring the patients' compliance, and documenting the need for the prescribed dosages. Compl. Ex. A at 4–8.  While Plaintiff's counsel has provided argument, Plaintiff has produced no evidence, let alone evidence available to the DEA at the time it issued the ISO, demonstrating that the five patients identified in the ISO were appropriately evaluated and monitored so as to justify their prescriptions.[1]  For the ALJ Hearing, Plaintiff has listed all five patients as witnesses and claims that they will testify they received proper treatment, but Plaintiff has presented no evidence of proper treatment in support of his TRO application.[2]

Plaintiff relies on *Bates Drug Stores, Inc. v. Holder*, No. 11-0167, 2011 WL 1750066 (E.D. Wash. May 6, 2011) to argue that the ISO was arbitrary and capricious.  In that case, the DEA alleged that a pharmacy engaged in several improper practices, including poor recordkeeping, accepting returns of controlled substances, filling prescriptions without all required data, and refilling non-refillable prescriptions.  The court recognized that "these practices can result in illegal diversion, theft, tampering with, or unintended dispensing of dangerous and addictive controlled substances to the general public for improper purpose," but it found that "[t]here is nothing in the record indicating that any . . . patient has been harmed or injured by the alleged violations."  *Id*. at *3.  For example, there was no evidence that "any controlled substance was dispensed . . . in an improper dosage."  *Id*.  The court thus concluded that there were serious questions about whether the pharmacy presented an imminent danger to the public.

The record in this case is distinguishable.  The DEA temporarily revoked Plaintiff's registration because he allegedly and repeatedly dispensed controlled

---

[1] At oral argument, Plaintiff's counsel stated that the medical records and other evidence reviewed by the DEA would show that the patients received proper treatment.  Plaintiff, however, has not provided any such evidence to this Court.

[2] Plaintiff has submitted an email from E.C., one of the ISO patients, stating that she is able to practice law because of Plaintiff's treatment and that Plaintiff counsels her on how to manage her pain.  *See* TRO Ex. E.  While proper pain management can have significant benefits, E.C's email does not fully address the allegations that she was prescribed controlled substances without proper medical evaluation, monitoring, and documentation.

substances in very high dosages without medical justification, evaluation, and monitoring, as demonstrated by missing or incomplete records.  While the court in *Bates* "ha[d] serious doubts that the alleged violations, which [the pharmacy] has been diligently working to correct, pose an *imminent* danger to public health and safety," *id.*, the evidence in this case raises serious concerns about the improper dispensing of highly addictive and frequently abused substances that can have devastating consequences.  The need for careful evaluation, monitoring, and control in these circumstances is obvious; and the combination of high dosages and the lack of documentation justifying those dosages and demonstrating proper evaluation and oversight is troubling.

Given the record in this case and the highly deferential standard of review, Plaintiff has not demonstrated that he is likely to succeed on the merits.  *See Evergreen Pharmacy, Inc.*, 2022 WL 3294842, at *11 ("[Plaintiff's] arguments boil down to a matter of weight—i.e., the DEA did not have enough evidence of actual abuse or diversion to show that there was an immediate harm to the public interest.  But under the arbitrary and capricious standard, the Court is limited to considering whether the DEA had a mere rational connection from the facts to its decision.").  Nor can the Court say that Plaintiff has raised serious questions about whether the DEA's ISO was arbitrary and capricious.  The record of inexplicably dispensing high dosages of fentanyl, oxycodone, and other potentially dangerous opioids without proper evaluation, documented medical necessity, and oversight—which, according to an independent medical expert relied upon by the DEA, constituted a violation of minimal medical standards—is rationally related to the suspension decision.

The failure to satisfy the first *Winter* factor is fatal to Plaintiff's TRO request.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  But even if Plaintiff had raised serious questions going to the merits of the case, he has not shown that he will face irreparable harm or that the balance of equities tips sharply in his favor.  Plaintiff could show irreparable harm if he would be forced out of business by the suspension of his license.  *See Phany Poeng v. United States*, 167 F. Supp. 2d 1136 (S.D. Cal. 2001).  Plaintiff conclusorily asserted in his declaration accompanying the TRO that he "will have to close down [the] practice indefinitely within the next few weeks." Dkt. No. 16-2 ¶ 8.  With his Reply, Plaintiff presented evidence that (1) his business account has lost income since the suspension and (2) the government has seized personal and business funds found at his home and in his business' bank account.  *See* Dkt. No. 22 at Exs. A & B.  Plaintiff provided three months of financial statements from his business account, Dkt. No. 22-3, which do not show how much is needed monthly to

support his practice, whether Plaintiff has personal or other financial resources to support the practice, or the length of time he would be able to support the practice without income from patients who are prescribed controlled substances.  This partial financial picture is insufficient for the Court to conclude that Plaintiff will have to close his practice indefinitely in a few weeks, as he asserts.  This assertion is also undercut by the six-week delay in seeking a TRO.  While the delay is not dispositive, it is at least questionable for a party to take six weeks to file a lawsuit when he purportedly has a total of nine weeks before his business will permanently fail.  Besides harm to himself and his business, Plaintiff also asserts that his patients are being irreparably harmed without his ability to prescribe them necessary medication.  But the Ninth Circuit has emphasized that the standard to show "irreparable harm" for preliminary relief requires a court to focus on the harm to the plaintiff.  *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 822 (9th Cir. 2018).

On this record, the third and fourth factors—the balance of equities and the public interest—do not support granting the TRO.  With his application, Plaintiff included letters from patients who describe the benefits of access to pain medication and the harm they have suffered or will suffer from Plaintiff's inability to continue writing their prescriptions.  *See* TRO at Exs. D–G.  Harm to Plaintiff's patients is properly considered when evaluating the third and fourth factors.  *See, e.g.*, *Bates Drug Stores, Inc.*, 2011 WL 1750066, at *3.  However, the government has raised serious issues about the propriety of Plaintiff's prescriptions (as described in the ISO), and Plaintiff has not responded by producing substantial *evidence* to refute claims that he has been improperly dispensing high dosages of the controlled substances at issue.  If Plaintiff's prescription practices violate minimum standards of care as the DEA's medical expert has found, the public interest would not be well served by granting the TRO.  Nor has Plaintiff shown that there are no other available providers able to properly treat patients who can no longer receive a prescription from him.

In sum, Plaintiff has not shown at this preliminary stage that he likely will prevail on the merits of his claim that the DEA acted arbitrarily and capriciously in temporarily suspending his license.  In reaching this conclusion, it bears emphasis that this Court's review of the DEA's decision is, by law, "highly deferential." The failure to show a likelihood of success on the merits is dispositive of Plaintiff's TRO application.  But Plaintiff also has not shown on this record that he will suffer irreparable harm.  He claimed almost three weeks ago that he would have to "close down [his] practice indefinitely within the next three weeks" and "lay off" all his staff, yet he provided only partial financial information in support

of that claim, and his counsel stated at oral argument that Plaintiff has already permanently closed his doors.[3] As for the public interest, the Court is certainly concerned about the potential impact on vulnerable patients who need treatment to manage their pain. This concern, however, must be evaluated in the context of a case in which the DEA is asserting abusive prescription practices and its decision is entitled to deferential review. Having considered the *Winter* factors, the Court must deny Plaintiff's application.

IT IS SO ORDERED.

Date: January 3, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

[3] At oral argument, the Court asked Plaintiff's counsel whether Plaintiff was "permanently out of business," and she responded: "Yes. I would have to say yes." Counsel then seemed to hedge, saying that "if this hearing does not go his way, his doors are shut, yes." The Court then followed up and asked: "He's permanently closed his doors?" Counsel responded: "Yes." If Plaintiff has permanently closed his doors, then an order now would not seem to address the harm that purportedly has already occurred.